UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**OMAR TRIPLETT,** *a/k/a The Doctor*,

                                  **Plaintiff,**

    vs.                                                      9:17-cv-656
                                                                 (MAD/TWD)

**CHAD ASCH,** *staff worker or T.A., CNYPC*;
**MARK MARTIN,** *staff worker or T.A., CNYPC*;
**TERYLE WILLIAMS,** *staff worker or T.A., CNYPC*;
and **DR. BERKHEIMER,** *CNYPC*,

                                  **Defendants.**
_____

**APPEARANCES:**                                      **OF COUNSEL:**

**OMAR TRIPLETT**
**O1-A-2100**
Marcy Correctional Facility
P.O. Box 3600
Marcy, New York 13403
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**             **DENISE BUCKLEY, AAG**
**STATE ATTORNEY GENERAL**          **HELENA PEDERSON, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    On June 19, 2017, Plaintiff pro se Omar Triplett ("Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action asserting claims arising out of his previous confinement at the Central New York Psychiatric Center ("CNYPC"). *See* Dkt. No. 1. On August 29, 2017, the Court

reviewed the sufficiency of the Complaint, directed certain Defendants to respond, dismissed certain claims with and without prejudice, and afforded Plaintiff the opportunity to submit an amended pleading.  *See* Dkt. No. 12.  On November 30, 2018, the Court granted in part Plaintiff's motion to amend his complaint, and the amended complaint is now the operative pleading.  *See* Dkt. Nos. 65 & 66.  The claims that survived initial review are: (1) Eighth Amendment excessive force claims against Security Hospital Treatment Assistants ("SHTA") Chad Asch, Mark Martin, and Teryle Williams; (2) Eighth Amendment excessive force and failure to protect claims against SHTA Supervisor Kenneth Paparella; and (3) Fourteenth Amendment due process claims against Dr. Harold Berkheimer, Dr. Luis Hernandez, and Executive Director Maureen Bosco (collectively "Defendants").  *See* Dkt. No. 65.

On September 6, 2019, the remaining Defendants moved for partial summary judgment.  *See* Dkt. No. 93.  The Court granted Plaintiff two extensions of time to respond to the pending motion, which he did on December 3, 2019.  *See* Dkt. No. 103.  In an Order and Report-Recommendation dated June 2, 2020, Magistrate Judge Dancks recommended that the Court grant in part and deny in part Defendants' motion for summary judgment.  *See* Dkt. No. 110.  On June 23, 2020, the Court adopted Magistrate Judge Dancks' Order and Report-Recommendation in its entirety.  *See* Dkt. No. 111.  As a result, the following claims remained for trial: (1) Defendants Asch, Martin, and Williams used excessive force on Plaintiff in violation of the Eighth Amendment on June 19 & 20, 2014; and (2) Defendant Berkheimer force medicated Plaintiff in violation of his Fourteenth Amendment due process rights on June 19, 2014.

On January 7, 2021, the Court appointed *pro bono* trial counsel to represent Plaintiff at trial.  *See* Dkt. No. 112.  That same day, the Court set a telephone pretrial conference for February

8, 2021. At the February 8, 2021 telephone pretrial conference, the Court set a firm trial date of June 1, 2021.

In a letter received on April 22, 2021, Plaintiff submitted a request to appoint new *pro bono* counsel and indicated his desire to settle this case. *See* Dkt. No. 128. On April 29, 2021, the Court held a telephone status conference with Plaintiff and his *pro bono* counsel, Robert Schofield, Esq. and Evan Piercey, Esq. At this status conference, Plaintiff first indicated that he did not request court-appointed counsel. *See* Transcript of Status Conference dated Apr. 29, 2021 ("Apr. 29 Tr.") at 3. Second, Plaintiff stated that there was no need for a trial because he planned on pursuing a settlement of this case. *See id.* Further, Plaintiff indicated that he has been busy with other litigation he has pending in the Southern and Eastern Districts of New York. *See id.* at 3-4. Thereafter, *pro bono* counsel addressed the Court and indicated that they had spoken with the Attorney General's Office regarding possible settlement and relayed that, while they would be unable to meet Plaintiff's demands, they would make a counteroffer in due course. *See id.* at 4. At this point, the Court asked Plaintiff if he was willing to continue being represented by *pro bono* counsel for the time being, so that counsel could continue settlement discussions with the Attorney General's Office. *See id.* at 4-5. In response, Plaintiff again stated that he had no desire to proceed to trial and discussed a prior trial in Syracuse "when the people flagrantly conspired and lied at [him] on the stand," as the reason he distrusts the legal system. *See id.* at 5. At this point, the Court again inquired whether Plaintiff would like to proceed with appointed counsel or proceed with this litigation *pro se*. *See id.* at 7. In response, Plaintiff stated that he wanted to have *pro bono* counsel relieved from further representation in this matter. *See id.* Upon relieving appointed counsel, the Court instructed Plaintiff as follows:

> If this case is not settled by June 1st, it is going to go to trial, and if you refuse to participate in trial, the case will be dismissed. This case is four years old, it needs to be brought to a conclusion. One way to bring it to a conclusion is settlement, and the other way is ... a trial. And I want to be very, very clear: If you are unable to settle the case by June 1st, then there will be a jury here in Albany waiting for you to come and to try the case; and if you don't come, for any reason, this case will be dismissed.

*Id.* at 8. The Court further attempted to dissuade Plaintiff from proceeding *pro se* when appointed counsel was ready to proceed. *See id.* at 9. Finally, Plaintiff indicated that he intended to try to get a change of venue to New York City, implying that he was about to be released from custody and that he would soon by living there. *See id.* at 10. In concluding the status conference, Mr. Schofield stated that he remained willing to assist in getting to Plaintiff the file that his law firm had created during its representation of Plaintiff and that they were further willing to assist Plaintiff in finding new counsel, should he so desire. *See id.* at 10-11.

On May 19, 2021, the Court attempted to hold the previously scheduled final pretrial conference by telephone with Plaintiff and representatives from the Attorney General's Office. When the Court called Marcy Correctional Facility, it was informed by the Acting Supervising Offender Rehabilitation Coordinator at Marcy C.F. that Plaintiff refused to leave his cell to participate in the conference. *See* Text Order dated May 19, 2021. Due to Plaintiff's refusal to participate, the Court rescheduled the conference for May 21, 2021, and further reminded Plaintiff in its written text order that trial is scheduled to begin on June 1, 2021 and that his refusal to participate in trial and/or conferences will result in this case being dismissed. *See id.*

On May 21, 2021, Plaintiff appeared for the rescheduled pretrial conference. *See* Text Minute Entry dated May 21, 2021. At this conference, the Court first reiterated the firm trial date, to which Plaintiff again stated that he did not want to proceed with trial and would instead prefer

4

to settle this case. *See* Transcript of Status Conference dated May 21, 2021 ("May 21 Tr.") at 2. After hearing the parties' respective positions on settlement, it was clear that settlement would not be possible at that time. *See id.* at 2-10. Thereafter, Plaintiff requested to adjourn the trial date and new *pro bono* counsel to be appointed. *See id.* at 11-12. The Court denied the request to adjourn the trial date and refused to appoint new *pro bono* counsel at such a late date. *See id.* at 12-13. The Court reminded Plaintiff that it had already appointed "an excellent attorney" to represent him and that, despite the Court's attempts to convince him to proceed with appointed counsel, Plaintiff was adamant about proceeding *pro se*. *See id.* at 12-13. Plaintiff then indicated that he was willing to proceed to trial *pro se*, but stated that his other pending lawsuits were occupying a significant amount of his time. *See id.* at 15-16. At this point, Plaintiff asked if the Court could "reinstate" Mr. Schofield as *pro bono* counsel, to which the Court responded that it would reach out to Mr. Schofield to determine his willingness to be reappointed as *pro bono* counsel. *See id.* The conference concluded with the Court advising Plaintiff that, in the absence of a settlement, he would be produced for trial on June 1, 2021. *See id.*

Thereafter, the Court reached out to Mr. Schofield regarding continuing his law firm's representation of Plaintiff. Mr. Schofield agreed to assist Plaintiff and the Court in attempting to negotiate a settlement between the parties, but indicating that he was unable to represent Plaintiff at trial due to commitments he had made since he was relieved from further representing Plaintiff. As such, Mr. Schofield was re-appointed to represent Plaintiff for the sole purpose of assisting in settlement discussions on May 24, 2021. *See* Dkt. No. 144. In the week leading up to trial, Mr. Schofield was able to get a significantly higher settlement offer from Defendants than that which was previously offered. Notwithstanding these efforts, Mr. Schofield was unable to relate the new

5

settlement offer to Plaintiff, despite his multiple attempts, due to Plaintiff's refusal to accept any telephone calls from appointed counsel.

On June 1, 2021, Defendants, representatives of the Attorney General's Office, and approximately thirty (30) prospective jurors were at the James T. Foley Courthouse prepared to start with jury selection and the trial of this matter.  Prior to the start of proceedings, the Court was informed by Deputy Superintendent for Correctional Mental Health Danielle Medbury at Marcy C.F. that Plaintiff refused to be taken to Court that morning.  Upon learning of Plaintiff's refusal, the Court attempted to schedule a telephone conference for approximately 10:00 a.m. with Plaintiff to discuss his refusal to be transported for trial.  After several attempts, officials instructed the Court that Plaintiff was again refusing to come out of his cell or otherwise participate in a conference with the Court.

Upon learning of Plaintiff's refusal to be transported for trial or to participate in a telephone conference to explain his refusal, the Court granted Defendants' oral motion to dismiss this case.  In granting Defendants' motion, the Court indicated that a written order outlining the reasons for dismissal would follow, which are set forth below.

## II. DISCUSSION

Although Rule 41 of the Federal Rules of Civil Procedure permits federal courts to dismiss an action for failure to prosecute, *see* Fed. R. Civ. P. 41(b), this authority "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962); *see also Lewis v. Rawson*, 564 F.3d 569, 575 (2d Cir. 2009).  "It is beyond dispute that a district court may dismiss a case under Rule 41(b) when the plaintiff refuses to go forward with a properly scheduled trial."

*Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990) (footnote omitted).  "'One naturally expects the plaintiff to be present and ready to put on [his] case when the day of trial arrives.  A litigant's day in court is the culmination of a lawsuit, and trial dates — particularly civil trial dates — are an increasingly precious commodity in our nation's courts.'"  *Frederick v. Murphy*, No.6:10-cv-6527, 2018 WL 10247403, *5 (W.D.N.Y. Apr. 16, 2018) (quoting *Moffitt v. Ill. State Bd. of Educ.*, 236 F.3d 868, 873 (7th Cir. 2001)).  "'Where a plaintiff does not appear at the trial date or ... is inexcusably unprepared to prosecute the case, Rule 41(b) dismissal is particularly appropriate.  Indeed, such behavior constitutes the epitome of a "failure to prosecute."'"  *Id.* (quoting *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 364 (6th Cir. 1999)); *see also Noli v. C.I.R.*, 860 F.2d 1521, 1527 (9th Cir. 1988) (noting that the "dismissal for failure properly to prosecute will normally arise where a party fails to appear at trial").

The Second Circuit has "fashioned guiding rules that limit a trial court's discretion in this context...."  *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004).  The *Drake* factors consider whether

> (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

*Id.*  However, this Court is guided by the more recent Second Circuit decision in *Lewis v. Rawson*, 564 F.3d 569 (2d Cir. 2009).  There, the court determined that the *Drake* factors were "not particularly helpful" in analyzing whether dismissal was appropriate where the plaintiff declined to proceed with his proof at trial.  *Id.* at 577.  In *Lewis*, the Second Circuit affirmed the district

court's dismissal of the plaintiff's case for failure to prosecute where the *pro se* plaintiff refused to testify, and his testimony was "the only direct evidence that could support his claims." *Id.*

The scenario presented in *Lewis* is akin to the present matter, where Plaintiff failed to appear for the commencement of his day-certain trial. The *Lewis* court questioned the usefulness of the *Drake* factors in this context by distinguishing the *Lewis* facts from cases involving missed filing deadlines or the noncompliance with discovery orders. *See id.* at 580 ("[W]here a district court is confronted with a 'plaintiff's unwillingness to proceed on the date scheduled for trial, as opposed to the more typical failure to comply with her discovery obligations on time, or to meet some other pre-trial deadline,' it is 'not unreasonable' to consider treating such unwillingness 'more severely'") (quoting *Moffitt*, 236 F.3d at 873). The dilatory conduct of a plaintiff during motion practice or discovery, while not condoned by the Court, is distinguishable from the intentional refusal to proceed with the commencement of a trial, which may be fairly categorized as the most flagrant instance of a plaintiff's "failure to prosecute." *Knoll*, 176 F.3d at 364.

Here, on the date that trial was scheduled to commence, June 1, 2021, Plaintiff refused to be transported to the courthouse and then repeatedly refused to participate in a conference call with the Court. Plaintiff has offered no explanation for his behavior, other than his past insistence that this case should settle, which he preferred to trial.

Once this case became trial ready, the Court appointed Mr. Schofield as *pro bono* counsel, an extremely well-qualified attorney who has been practicing for nearly twenty-five years. Despite this, on April 29, 2021, Plaintiff made it clear that he no longer wanted to be represented by appointed counsel and would prefer to proceed *pro se*. On that date, when Plaintiff stated that he wanted to proceed with this matter *pro se*, the Court specifically instructed Plaintiff that "[i]f this case is not settled by June 1st, it is going to go to trial, and if you refuse to participate in trial,

8

the case will be dismissed." *See* Apr. 29 Tr. at 8. After Plaintiff refused to participate in the previously scheduled May 19, 2021 status conference, the Court rescheduled that conference for May 21, 2021. At this rescheduled conference, the Court again reiterated the firm June 1, 2021 trial date and refused to appoint new *pro bono* counsel or further adjourn this trial. *See* May 21 Tr. at 3-12. In refusing to adjourn this trial, the Court noted that the trial date was set back in January 2021, that the facts of this case relate to events that occurred in 2014, and that Defendants are entitled to their day in court. The Court again warned Plaintiff that, absent settlement, that this case was going forward on June 1, 2021.[1] *See id.* at 13.

      Thereafter, in an effort to facilitate Plaintiff's desire to settle this matter, and at Plaintiff's request, Mr. Schofield was reappointed to represent Plaintiff for purposes of settling this case. Mr. Schofield diligently worked at settling the case and obtained a settlement offer from Defendants that was significantly higher than any offer previously made. Despite these efforts, Plaintiff repeatedly refused to communicate with Mr. Schofield to discuss the possible settlement. Mr. Schofield even appeared at the courthouse on the morning of June 1, 2021 in an effort to discuss the settlement offer with Plaintiff in person, prior to the start of trial. Mr. Schofield, of course, was unable to discuss his efforts with Plaintiff because he refused to be transported to the courthouse or participate in a telephone conference.

      Plaintiff's words and actions have made it abundantly clear that he no longer desires to prosecute this matter and that Defendants' motion to dismiss this matter must be granted. Plaintiff's failure to appear for his day-certain trial date caused significant prejudice to Defendant and the Court. Defendants were ready and willing to engage with Plaintiff to discuss settlement,

---

[1] The Court also notes that in all telephone conferences with the Court, Plaintiff was generally cogent, polite, and responsive to the Court's inquiries.

but he refused to engage. The Court assembled a jury pool in preparation for *voir dire* on the morning of June 1, 2021, many of whom traveled great distances to be present. As one district court aptly stated, "[t]he Court cannot permit a party to defy Court orders, waste Court resources, disrupt the lives of potential jurors, witnesses, and opposing counsel, and prejudice the opposing party in this manner." *Njema v. Wells Fargo Bank, N.A.*, No. 13-CV-0519, 2016 WL 308780, *5 (D. Minn. Jan. 25, 2016), *aff'd*, 673 Fed. Appx. 609 (8th Cir. 2017).

It is worth repeating once more that Plaintiff was aware that this was a day-certain trial date, and that the Court was unwilling to adjourn the trial at such a late date. The Court has already spent significant time and resources preparing for Plaintiff's trial. In addition, Defendants and their counsel have also expended significant time, resources, and costs in preparing for trial. Plaintiff has failed to put forth any satisfactory excuse for the disruption and expense caused by his failure to appear at trial. Plaintiff was afforded his day in court, and, by his own volition, he decided to squander that opportunity by wasting scarce judicial resources. Upon consideration of the facts set forth above and the applicable law, the Court finds that no other sanction but dismissal with prejudice would be appropriate under these circumstances. *See Lewis*, 564 F.3d at 581 (noting that "where a party fails to appear or refuses to proceed with trial *after* the jury ha[s] been drawn, dismissal with prejudice may be particularly appropriate").

### III. CONCLUSION

After carefully considering the entire record in this matter and the applicable law, the Court hereby

**ORDERS** that Defendants' motion to dismiss is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 2, 2021
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge